## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 2313 | DATE | October 14, 2003 |
| CASE TITLE | MidAmerican Energy v Utility Resources Corp. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion to dismiss is granted in its entirety.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 15 2003 | |
| | Docketing to mail notices. | | date docketed | 20 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 03 OCT 14 PM 4:00 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MIDAMERICAN ENERGY COMPANY, )
)
Plaintiff, )
)   No.   03 C 2313
v. )
)   Judge Robert W. Gettleman
UTILITY RESOURCES CORPORATION, )
)
Defendant. )

**DOCKETED**
**OCT 1 5 2003**

## MEMORANDUM OPINION AND ORDER

Plaintiff MidAmerican Energy Company has brought a five count amended complaint against defendant Utility Resources Corporation alleging: (1) intentional interference with contractual relations; (2) tortious interference with business relations; (3) tortious interference with prospective economic advantage; (4) violation of the Illinois Interference with Utility Services Act, 740 ILCS 95/1; and (5) violation of Illinois Consumer Fraud and Deceptive Practices Act (the "Consumer Fraud Act"), 815 ILCS 505/2. Defendant has moved to dismiss all counts for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion is granted.

### FACTS[1]

Plaintiff, a Des Moines, Iowa, based energy company certified by the Illinois Commerce Commission as a retail electric supplier, is engaged in the sale of electricity and natural gas to customers throughout Iowa, Ohio and Illinois. Plaintiff entered into Supplier Agreements with twenty customers in Illinois (the "Customers") under which plaintiff was to supply 100% of each customer's electric energy requirements through May 2003. Seven of the Customers have defaulted

---

[1] The facts are taken from plaintiff's complaint and the exhibits attached thereto.



on their Supplier Agreements ("Defaulting Customers") and 13 have continued to purchase electricity from plaintiff pursuant to the contract ("Continuing Customers").

Defendant Utility Resources Corporation is an energy company that provides its clients with, services designed to reduce the clients' electric costs by implementing electric retail "wheeling." According to plaintiff's complaint, all the Customers were "procured" by defendant.

The price paid by each of plaintiff's customers under the Supplier Agreements is determined by aggregating, (1) the energy supply cost (i.e. the price for energy procured by plaintiff for the customer), and (2) the delivery service costs, which are prices for transmission and distribution, ancillary services, and customer transition charges ("CTCs"), payable to Commonwealth Edison Co. ("ComEd") for costs associated with utilizing its transmission and distribution network. The delivery service costs are set by tariffs filed with the Illinois Commerce Commission and Federal Energy Regulation Commission. Since 1999 ComEd has been permitted to impose CTCs on electricity users who take energy supplies from alternate providers such as plaintiff, to compensate ComEd for capital investments made prior to deregulation of the Illinois energy market. CTCs are based on the market value of electric power; as the market value changes, the CTC charges change in inverse proportion. ComEd's CTCs are governed by a "rate CTC-customer transition charge" filed with the Illinois Commerce Commission (the "CTCs tariff").

Prior to June 19, 2002, defendant entered into "Utility Cost Reduction Agreements" with each of the twenty Customers, under which defendant was to provide the customer with consulting services designed to reduce electric costs by implementing retail electric wheeling. Under the Cost Reduction Agreements, defendant was to be compensated based on the actual savings incurred by the customer. The Cost Reduction Agreements provide for defendant to received 25% of any refund,

2

rebates, or credits received by the customer as a result of defendant's efforts, as well as 25% of any future savings for a period of 36 complete billing months following defendant's services. Thus, defendant receives no compensation if its customer receives no savings as a result of defendant's efforts.

In May 2002, there was a decline in the market value of electric energy, resulting in an inversely proportionate increase in the CTCs payable to ComEd, with a net result of an increase in electric prices paid by the Customers. Plaintiff alleges that as a result of the increase in CTCs, defendant's commissions from the Customers were imperiled. Plaintiff further alleges that defendant never told the Customers prior to their execution of the Supplier Agreements that CTCs were subject to increase. Finally, plaintiff alleges that between April 2002 and November 2002 defendant repeatedly contacted the Customers and advised them to ignore the default provisions contained in the Supplier Agreements, and to unilaterally cancel those Supplier Agreements with plaintiff.

## DISCUSSION

Defendant has moved to dismiss all counts for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under this Rule is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts the factual allegations as true and draws all reasonable inferences favorable to plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

The consideration of a Rule 12(b)(6) motion is generally restricted to the pleadings, which include the complaint, any exhibits attached thereto, and supporting briefs. Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753 (7th Cir. 2002). Accordingly, "where a

plaintiff attaches documents to his complaint and relies upon the documents to form the basis of a claim or part of a claim, dismissal is appropriate if the document negates the claim." Id. at 754.

In Count I, plaintiff alleges that defendant improperly and intentionally induced the seven Defaulting Customers to terminate their Supplier Agreements with plaintiff. The elements of a claim for intentional interference with existing contract rights are set forth in HPI Healthcare Services, Inc. v. Mt. Vernon Hospital, Inc., 131 Ill. 2d 145, 154 (1989)[2]:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other; and (5) damages.

Additionally, where the conduct of a defendant in an interference with contract action is privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious. Id. at 156. Malicious, in the context of intentional interference with contractual relation cases, means simply that the interference was both intentional and without justification. Id.

The parties dispute whether defendant's conduct was protected by a privilege, and thus dispute who has the burden of pleading justification (or lack thereof). Illinois recognizes a privilege in intentional interference with contract cases where the defendant was acting to protect an interest that the law deems to be of equal or greater value than the plaintiff's contractual rights. Id. at 157. Illinois courts have found the following actions to involve such interests: actions involving the First Amendment right to petition government for redress of grievances; the reporting of the unauthorized practice of medicine by a veterinary member; evaluations by hired professional consultants; an attorney's rendering advice to his clients; and a corporate officer acting to influence the actions of

---

[2]The parties agree that Illinois law governs the instant dispute.

4

his corporation. Mannion v. Stallings & Co., 204 Ill. App.3d 179, 189-90 (1st Dist. 1990) (and cases cited therein). In each of these instances, the courts have balanced the defendant's interests with the plaintiff's interests and found significant policy reasons for granting a qualified privilege.

In the instant case, defendant was hired to provide "consulting services designed to reduce electric costs" by implementing electric retail wheeling. Unless defendant enjoyed a qualified privilege to make recommendations to its clients, an improper chilling effect would be imposed on defendant, which was retained to render such professional judgments. See Genelco, Inc. v. Bowers, 181 Ill. App. 3d 1, 6 (1st Dist. 1989). Accordingly, the court concludes that defendant is entitled to a qualified privilege.

Defendant's qualified privilege means that plaintiff is required to plead and prove lack of justification for defendant's alleged interference. In Illinois, that would mean that plaintiff was required to "set forth factual allegations from which it can be reasonably inferred that defendant's conduct was unjustified." HPI Healthcare, 131 Ill. 2d at 158. Illinois requires such specificity, to "prevent the chilling effect that would occur if [consulting] companies could be subject to litigation every time they exercised their business judgment . . . ." Id. The privilege is not absolute, however, and even a defendant protected by a privilege is not justified in "engaging in conduct that is totally unrelated or even antagonistic to the interest which gave rise to the defendant's privilege." Id. For example, a breach induced solely for the defendant's gain, or solely for the purpose of harming the plaintiff is not justified because such conduct would not have been done to further the client's business.

In the instant case, plaintiff has alleged generally that "defendant's conduct is unreasonable, willful and malicious and done with intent to cause egregious harm to [plaintiff]," and "that

5

defendant's conduct was solely for its own benefit, not for the benefit of the Customers." Under the notice pleading standards of the federal rules, such general allegations would ordinarily be sufficient. See Fed. R. Civ. P. 9(b). The exhibits attached to the complaint, however, belie those allegations. First, as already noted, under defendant's Utility Cost Reduction Agreements with the Customers, defendant benefits (by commission) only if it saves the customer money. Therefore, any action in defendant's interest must necessarily also be in the customer's interest.

Second, also attached to the complaint is a letter from defendant to one of the Customers, which is allegedly representative of letters sent to all seven Defaulting Customers, and which purportedly forms the basis of plaintiff's interference claims. In that letter, defendant informs its customer that ComEd has had increased the CTCs in June 2002, and that defendant had been working with plaintiff to reduce the impact those increases would have on defendant's customers . According to the letter, plaintiff had given defendant's customers a $.005 credit which, in defendant's view, did not provide adequate relief for the $.025 increase in the CTC. The letter then explains that the customer's Supplier Agreement with plaintiff has a provision that allows a party to cancel the agreement upon 30 days notice if there is a change in a law, regulation or Transportation Tariffs (or the interpretation thereof) that prevents either party from performing or which makes performing economically burdensome. Defendant gave the 30 day notice to plaintiff on its customer's behalf, invoking the economically burdensome clause. The letter then asks for permission to terminate the Supplier Agreement on the customer's behalf, and explains the customer's options if it elects to do so. Finally, and most importantly, the letter also provides:

> Please understand that [plaintiff] does not agree with our interpretation of this contract language. You may want to have your legal counsel review your contract

6

before you give us permission to terminate this contract. In addition, we would now recommend you pay your bills [from plaintiff].

Contrary to the allegations of the complaint, nothing in this letter could possibly constitute misrepresentation concerning the legal consequences of terminating the Supplier Agreement. It quite clearly indicates that plaintiff does not agree with defendant's legal position and just as clearly tells the customer to pay plaintiff's bills. Whether, as plaintiff alleges, the 30 day notice sent by defendant to plaintiff was improper under the Supplier Agreement, and whether defendant's interpretation of the Supplier Agreement is legally sound, is irrelevant to plaintiff's claim. The letter clearly indicates that defendant's actions where designed to save its customers money, thereby negating any claim of unjustified or malicious interference with contract. Accordingly, defendant's motion to dismiss Count I is granted.

In Counts II and III, plaintiff alleges the related torts of tortious interference with business relations and tortious interference with perspective economic advantage. As with Count I, both claims arise out of defendant's attempts to cancel the Supplier Agreements on behalf of the Defaulting Customers. As set forth above, defendant's conduct with respect to the Defaulting Customers was conditionally privileged, and plaintiff's exhibits demonstrate that defendant was acting for the benefit of its customers. " The right to engage in a business relationship is accorded less protection than the right to receive the benefits of a contract. Consequently, interference in the business affairs of another by an outsider is even more likely to be privileged where no contract is involved." Shott v. Glover, 109 Ill. App. 3d 230, 236 (1st Dist. 1982). Accordingly, for the reasons set forth above with respect to plaintiff's claim of interference with contractual relations, defendant's motion to dismiss Counts II and III is granted.

Transcript, H.B. 2437. "It'll provide an added deterrent for utilities to use to show those customers that are tempted to steal, that it's very risky to attempt to divert, and expensive when they are caught and convicted." Id.

Because the allegations in the complaint do not claim theft of services in any manner, they are not covered by the Act. Accordingly, defendant's motion to dismiss Count IV is granted.

Finally, Count V alleges a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2. To state a claim under this Act, plaintiff must allege: (1) a deceptive act or unfair practice; (2) an intent on the defendant's part that the consumer rely on the deception; and (3) that the deception occurred during trade or commerce. Saunders v. Michigan Avenue National Bank, 278 Ill. App. 3d 307, 312 (1st Dist. 1996).

Defendant has moved to dismiss, arguing that plaintiff is not a consumer, which the Act defines as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of trade or business, but for his use or that of a member of his household . . . .. 815 ILCS 505/3. Plaintiff admits that it is not a consumer of defendant's product. The dispute is, therefore, simply between two businesses, requiring plaintiff to meet the "consumer nexus test by showing that the conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." Athey Products. Corp. v. Harris Bank Roselle, 89 F.3d 430, 437 (7th Cir. 1996).

Plaintiff argues that its complaint meets this test by alleging generally that defendant's actions: (1) will subject customers to increased electricity costs; (2) cause false information to be circulated throughout the retail electric market; and (3) adversely effect plaintiff's ability to offer long-term energy contracts to consumers. The court disagrees. Although the complaint contains

9

these general allegations, the actual specific factual allegations of the complaint relate to defendant's advice to the seven Defaulting Customers to terminate their Supplier Agreements with plaintiffs.[3] While the complaint alleges that defendant made misrepresentations to the defaulting customers, those customers were also clients of defendant. Defendant is not alleged to have made a misrepresentation to the general public or to any actual or potential customers of plaintiff who were not also clients of defendant. In short, the case is a simple private business dispute that in no way implicates consumer protection concerns. Accordingly, defendant's motion to dismiss Count V is granted.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is granted in its entirety.

**ENTER:** October 14, 2003

_____
Robert W. Gettleman
United States District Judge

---

[3]The claims under the Consumer Fraud Act must meet the particular requirements of Fed. R. Civ. P. 9(b). <u>Nakajima All Co., Ltd. v. SL Ventures Corp.</u>, 2001 WL 641415 at *5 (N.D. Ill. 2001).